IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| VICTORIA L. SALERNO-BOLTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV1154 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Victoria Salerno-Bolton ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff filed her application for Disability Insurance Benefits on February 2, 2005, alleging a disability onset date of March 1, 2003. (Tr. 129-31)[2]  Her application was denied

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the
(continued...)

initially (Tr. at 93-97) and upon reconsideration (Tr. at 88-90). Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 87.) Plaintiff's attorney and an impartial vocational expert attended the subsequent hearing on January 23, 2008. (Tr. at 57.) Plaintiff, however, did not appear. (Tr. at 14, 61.)

Although the ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 62), the Appeals Council subsequently granted Plaintiff's request for review of the decision and remanded the case for a supplemental hearing (Tr. at 46-49). Plaintiff's counsel withdrew just prior to the supplemental hearing on November 18, 2009, and Plaintiff elected to proceed without the assistance of an attorney or other representative. (Tr. at 14.) Following the hearing, at which an impartial vocational expert again testified, the ALJ denied Plaintiff's claim. (Tr. at 14-30.) Thereafter the Appeals Council denied Plaintiff's request for review of the decision, making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 2-5.)

In rendering his disability determination on remand, the ALJ made the following findings later adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since March 1, 2003, the claimant's alleged onset date (20 CFR 404.1571 *et seq.* . . .).
>
> . . . .

---

[2] (...continued)
Commissioner's Answer [Doc. #7].

> 4. The claimant has the following severe impairments: degenerative disc disease; ulnar nerve palsy and status post decompression; bilateral carpal tunnel syndrome, status post bilateral carpal tunnel release surgery; obesity; depression; and somatoform disorder (20 CFR 404.1520(c) . . .).
> . . . .
>
> 5. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526 . . .).
> . . . .
>
> 6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of "light" work as defined in 20 CFR 404.1567(b) . . . except the claimant is limited to positions requiring only occasional climbing, balancing, stooping, kneeling, crouching and crawling; and is further restricted to positions involving simple, routine, repetitive tasks.

(Tr. at 17-22.)

The ALJ determined that the demands of Plaintiff's past relevant work exceeded the above residual functional capacity ("RFC"). (Tr. at 28.) However, the ALJ then considered Plaintiff's age, education, work experience, and RFC, along with the vocational expert's testimony regarding these factors, and found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. at 29-30.) Accordingly, he concluded that Plaintiff was not under a "disability," as defined in the Act, from her alleged onset date through the date of the decision. (Tr. at 30.)

## II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144

3

(4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: degenerative disc disease; ulnar nerve palsy, status post decompression; bilateral carpal tunnel syndrome, status post bilateral carpal tunnel release surgery; obesity; depression; and somatoform disorder. (Tr. at 17.) The ALJ found at step three that these impairments did not meet or equal a disability listing. (Tr. at 20.) Accordingly, he assessed Plaintiff's RFC and determined that Plaintiff could perform light work with further postural limitations. He also found that Plaintiff's mental impairments limited her to work involving simple, routine, repetitive tasks. (Tr. at 22.) Although the ALJ determined at step four that Plaintiff's RFC precluded her from performing her past relevant work, he concluded that Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 28-30.)

Plaintiff now argues that, on remand, the ALJ failed to properly weigh the medical opinions of record. In particular, she contends that the ALJ failed to (1) "explain why the opinions of treating source Dr. William Bell were not adopted," and (2) "discuss why the

---

[5] A claimant thus can qualify as disabled via two paths through the five-step sequential evaluation process. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.

7

opinions of state agency physicians Dr. Perry Caviness and Dr. Alan B. Cohen were not adopted." (Pl.'s Br. [Doc. #10] at 2.) After a thorough examination of the administrative decision and the underlying record, the Court agrees that the ALJ erred in failing to properly address limitations which were identified by the medical sources but were not included in the Plaintiff's RFC.

When an ALJ declines to assign controlling weight to a medical opinion, regardless of whether the source is treating or non-treating, he must "'explain in the decision the weight given' thereto and 'give good reasons in [his] . . . decision for the weight.'" Chirico v. Astrue, No. 3:10CV689, 2011 WL 6371315, at *5 (E.D. Va. Nov. 21, 2011) (unpublished) (quoting 20 C.F.R. § 404.1527(f)(ii); 416.927(f)(ii)). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thomas v. Comm'r of Soc. Sec., No. Civ. WDQ-10-3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012) (unpublished) (citing Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011)).

In the present case, the ALJ's decision addressed Dr. Bell's opinion as follows:

[T]he undersigned notes that the only functional assessment in the file from the claimant's treating physicians is the October 2005 "Certificate to Return to Work or School" provided by Dr. Bell. In that statement Dr. Bell said that the claimant was permanently restricted from engaging in activities involving working at heights, and that she was restricted to only limited bending, crawling, twisting, overhead reaching, and use of her upper extremities. Dr. Bell also stated that the claimant should be restricted to "limited lifting of 20 pounds;" limited standing of one hour maximum without breaks;" and "limited sitting of one hour maximum without breaks." The undersigned gives this statement some weight but not controlling weight. Dr. Bell's restrictions on lifting, working at heights, bending, twisting, crawling, and overhead reaching are supported by the medical evidence; he was her neurosurgeon, and the claimant had just recovered from

8

> bilateral carpal tunnel surgery and cervical fusion. However, there is no support in the treatment notes for Dr. Bell's restrictions on sitting and standing. A review of his treatment notes discloses that the claimant never complained to him of any problems with sitting and standing, and no clinical findings involving the claimant's lower extremities, thoracic and lumbar spine, or her ability to stand and sit were ever recorded.

(Tr. at 27.)

As Plaintiff correctly points out, the above discussion neither adopts nor discounts the bilateral arm limitations posited by Dr. Bell. (Pl.'s Br. [Doc. #10] at 9.) Significantly, Dr. Bell's statement further explains that Plaintiff continues to have "limited strength and sensation of the left arm" despite undergoing multiple surgeries and reaching maximum medical improvement. (Tr. at 1149.) In addition, although the ALJ concluded that Dr. Bell's restrictions on overhead reaching were supported by the medical evidence, that limitation was not further addressed or included in the RFC.

The state agency physicians also opined that Plaintiff had arm limitations after her surgeries. On June 14, 2005, Dr. Caviness found Plaintiff capable of light work with only occasional pushing and/or pulling with her left arm and frequent but not constant fingering. (Tr. at 1193.) On October 21, 2005, Dr. Cohen found Plaintiff capable of light work with frequent but not continuous handling with both hands. (Tr. at 1169.) The ALJ stated that he "generally agree[d] with the functional limitations imposed by the State agency medical consultants" (Tr. at 28), but, as with Dr. Bell's opinion, he failed to address these physicians' manipulative limitations in any way.

The decision gives "great weight" to the findings of just one physician, consultative examiner Dr. Frank Shafer. (Id.) However, Dr. Shafer's evaluation never posits any limitations

9

or restrictions. It simply presents his objective findings without tying them to Plaintiff's ability to perform basic work activities. (Tr. at 27, 1158-59.) Those findings include review of Plaintiff's history of elbow and hand pain and numbness. In addition, both Dr. Shafer and Dr. Caviness issued their evaluations prior to Plaintiff's left carpal tunnel and neck surgery on June 28, 2005, rendering their opinions incomplete as to Plaintiff's condition after this event. In light of the above findings, the ALJ clearly erred in failing to address opinion evidence of Plaintiff's arm limitations.

Defendant contends that any such error is harmless. In this regard, Defendant contends that although the ALJ did not include any upper extremity limitations in his RFC assessment, the jobs identified at step five of the sequential analysis do not require performance of tasks that exceed the additional limitations supported by the opinion evidence. At Plaintiff's hearing, the vocational expert testified that Plaintiff was capable of working as an information clerk and a storage rental clerk. (Tr. at 1443-44.) Defendant notes that The Dictionary of Occupational Titles ("DOT") provides that neither of these positions require constant or continuous handling or fingering. See DOT No. 237.367-018, available at 1991 WL 672187 and DOT No. 295.367-026, available at 1991 WL 672594. With respect to the limitations on pushing and pulling, which are not covered in the DOT, Defendant contends that in other, unrelated cases, these jobs have been found compatible with a restriction to only occasional pushing and pulling with one arm. See, e.g., Cichiowski v. Comm'r of Social Sec., No. 11-10284, 2012 WL 441131, at *4 (E.D. Mich. Jan. 24, 2012), adopted, 2012 WL 441166; Womack v. Astrue, No. 1:10cv2678, 2011 WL 7615062, at *5 (N.D. Ohio Nov. 30, 2011), adopted, 2012 WL 1004497; Taylor v. Astrue, No.

07-5335, 2008 WL 2345135, at *9 (W.D. Wash. June 6, 2008), rev'd on other grounds by 345 F. App'x 259.

Defendant therefore contends that the ALJ's omission of such restrictions from his RFC assessment had "no practical effect on the outcome of the case" Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999), and "remand would be an idle and useless formality," Wilson v. Comm'r of Social Sec., 378 F.3d 541, 547 (6th Cir. 2004) (quoting NLRB v. Wyman-Gordan Co., 394 U.S. 759, 766 n.6 (1969)). The Court has considered these contentions and acknowledges Defendant's position in this case. However, the Court ultimately concludes that resolution of this issue "would require excessive intrusion into the ALJ's domain." Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *3 (M.D.N.C. March 25, 2014). As noted in Anderson, this Court's "[r]eview of the ALJ's ruling is limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" Id. at *1 (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947)). In applying this doctrine in Anderson, the Court noted that "jurisprudence on this issue is far from clear," and "this court will err on the side of caution" and avoid "excessive intrusion into the ALJ's domain." Id. at *3. Thus, while the Court may make simple conclusions of law in finding that an ALJ's error is harmless, the Court may not "parse the

administrative transcripts and make . . . dispositive findings of fact that the ALJ did not make." Id. at *4.

In this case, as discussed above, Dr. Bell found overhead reaching limitations that the ALJ credited but did not further address or include in the RFC. Dr. Bell also found permanent restrictions on Plaintiff's use of her upper extremities. Dr. Cohen noted restrictions on handling, while Dr. Caviness recommended restrictions on fingering. It is the province and obligation of the ALJ to weigh these opinions in light of the medical evidence and formulate an RFC. Moreover, even if the proposed limitations on reaching, handling, and fingering could be resolved by reference to the DOT as Defendant suggests, Dr. Bell proposed's restrictions were not limited to reaching, handling, and fingering, and instead included a general limitation on use of both arms, while Dr. Caviness included limitations on pushing and pulling that cannot be resolved by reference to the DOT. Defendant asks the Court to find that the potential restrictions on pushing and pulling are still "compatible" with the positions proposed by the vocational expert, based on vocational expert testimony in other cases. However, it would seem that resting on such a finding would intrude excessively into the ALJ's domain. Cf. Golden v. Colvin, 1:13cv832, 2014 WL 2866328 (S.D. Ind. 2014) (finding that ALJ's failure to include limitations in RFC was not harmless error because "relying solely on those [DOT] publications is insufficient when the ALJ fails to include in her RFC and hypothetical question certain medical limitations that are not addressed in those texts"). Essentially, Defendant asks this Court to reconcile the various medical opinions as to Plaintiff's upper extremity limitations, formulate an RFC, compare the RFC to job descriptions in the DOT, and where not covered

by the DOT, rely on vocational expert testimony in other unrelated cases to conclude that Plaintiff can still perform jobs suggested by the vocational expert in this case. Given the regulatory scheme that applies here, these determinations must be made by the ALJ rather than this Court.[6] Therefore, the Court recommends that this case be remanded for further consideration of Plaintiff's upper extremity limitations.[7]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #12] should be DENIED, and Plaintiff's Motion for Summary Judgment [Doc. #9] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 4th day of February, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[6] The Court acknowledges Defendant's concerns regarding remands that are "idle and useless" formalities. In this regard, the Court further acknowledges that it is likely that any RFC formulated by the ALJ based on the medical opinions provided in this case would still be consistent with the positions suggested by the vocational expert. Therefore, it is likely that the ALJ will still conclude at Step Five that a significant number of jobs exist that Plaintiff can perform, despite any upper extremity limitations. It also appears that substantial evidence would exist to support such a conclusion, if properly made. However, it is simply beyond this Court's province to make those findings and conclusions for the ALJ in the first instance.

[7] Plaintiff also suggests that the ALJ erred in failing to include in her RFC the environmental limitations assessed by Dr. Caviness. (Pl.'s Br. at 7.) The Court notes that the DOT titles identified by the vocational expert do not appear to involve exposure to any environmental elements or hazards, but given the Court's conclusion above, it would be worthwhile for the ALJ to address this issue as well.